UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>TYRELL RICHMOND,<br><br>　　　　　Defendant. | No. 1:14-cr-00171-NONE<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE<br><br>(Doc. No. 33) |

Pending before the court is defendant Tyrell Richmond's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The motion is largely based on defendant's medical condition and the risks allegedly posed to him by the ongoing coronavirus ("COVID-19") pandemic. (Doc. Nos. 33, 37.) For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On December 14, 2015, defendant Richmond entered a plea of guilty, pursuant to plea agreement, to a one count superseding information in which he was charged with sex trafficking of a minor or by force, fraud and coercion in violation of 18 U.S.C. § 1591(a)(1). (Doc. No. 20,

/////

/////

1

22, 23.)[1]  The presentence report prepared thereafter in his case summarized defendant's offense conduct, reporting that in the summer of 2014, federal investigators learned that he had sex with three minors and helped them create their online prostitution profiles.  (Doc. No. 27 (Presentence Report, "PSR" at 4–5.)  It was determined that under the U.S. Sentencing Guidelines defendant Richmond's adjusted offense level was 31 and his criminal history placed him in category IV, resulting in an advisory sentencing guideline range calling for a term of imprisonment of between 151 and 188 months.  (PSR at 16.)  In addition, the mandatory-minimum sentence for defendant's offense of conviction was 120 months.  (*Id.* at 13.)  The U.S. Probation Office recommended a sentence of 151 months, the low end of the advisory guideline range.  (*Id.* at 16.)  On April 11, 2016, the court sentenced defendant to 151 months in prison, with a 60-month term of supervised release to follow, and imposed the $100 special assessment fee.  (Doc. Nos. 31; 32 at 2–3, 6.)

Defendant is currently serving his sentence at the U.S. Bureau of Prisons' ("BOP") Yazoo City (Medium) Federal Correctional Institution in Yazoo City, Mississippi ("FCI Yazoo City") and his projected release date is April 28, 2025.  *See Find an inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited June 7, 2021.)  On November 16, 2020, defendant filed a *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Doc. No. 33.)  Thereafter, the court referred the motion for appointment of counsel, and defense counsel later supplemented defendant's motion on March 9, 2021.  (Doc. Nos. 36, 37.)  On April 14, 2021, the government filed its opposition to the motion, and on April 21, 2021, defendant filed his reply thereto.  (Doc. Nos. 44, 49.)  After briefing was complete, defendant filed a notice regarding his release plan and the government filed a notice of a supplemental exhibit reflecting an update in defendant's medical records.  (Doc. Nos. 50, 51.)

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of

---

[1] Defendant was originally charged by way of complaint with three counts of sex trafficking of a minor, (Doc. No. 1), and he was subsequently charged by way of indictment with those same three counts and one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1), (Doc. No. 9.)

2

conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[2] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

/////

---

[2] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the Regional Director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

3

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[3]

The policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[4]; *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, the Ninth Circuit has recently held "that the current version of U.S.S.G. §1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). "In other words, the Sentencing Commission has not yet issued a policy statement 'applicable' to §

---

[3] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, LAW360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, LAW360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[4] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

3582(c)(1)(A) motions filed by a defendant." *Id.* The Ninth Circuit clarified that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.* (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

In so holding, the Ninth Circuit joined the five other circuits who have addressed this issue and have unanimously held "that U.S.S.G. § 1B1.13 only applies to § 3582(c)(1)(A) motions filed by the BOP Director, and does not apply to § 3582(c)(1)(A) motions filed by a defendant." *Id.*; *see, e.g.*, *United States v. Brooker (Zullo)*, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."); *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement §1B1.13."); *Gunn*, 980 F.3d at 1181 ("[T]he Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release. District judges must operate under the statutory criteria—'extraordinary and compelling reasons'—subject to deferential appellate review."); *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) ("In short, we agree with the Second Circuit and the emerging consensus in the district courts: There is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" (citation omitted)); *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021) ("We therefore agree with the district court that under the second part of § 3582(c)(1)(A)'s test, its finding that extraordinary and compelling reasons warranted a reduction in Maumau's case was not constrained by the Sentencing Commission's existing policy statement, U.S.S.G. § 1B1.13.").

5

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts that have done so have agreed that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id.*

*Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 461 F. Supp. 3d at 973–74; *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

**A.    Administrative Exhaustion**

On September 16, 2020, defendant Richmond submitted an administrative request for compassionate release to the warden at FCI Yazoo City. (Doc. No. 33 at 9–10.) Defendant filed his *pro se* motion on November 16, 2020 after the warden did not respond to his administrative request. (Doc. Nos. 33; *see* 37 at 6.) The government concedes that defendant has exhausted his

administrative remedies. (Doc. No. 44 at 4.) Because defendant filed the pending motion for compassionate release after submitting a request to the warden and waiting more than 30 days without receiving a response, defendant has exhausted his administrative remedies. Therefore, the court will turn to the merits of defendant's motion.

**B.    Extraordinary and Compelling Reasons**

"Extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). Even though the catch-all of "other reasons" was included in the policy statement at a time when only BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases). That interpretation is consistent with the Ninth Circuit's recent holding in *Aruda*.

Thus, the medical condition of a defendant may warrant compassionate release where he or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1 (A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

7

*Id.* at cmt. n.1 (A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, some courts have concluded that the risks posed by COVID-19 tips the scale in favor of release in particular situations. *See, e.g.*, *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405–06 (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. In these situations, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[5] In determining a defendant's projected release date, courts may take into account any "good time credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18 U.S.C. § 3624(b)(1). *See, e.g.*, *United States v. Burrill*, 445 F. Supp. 3d 22, 24 n.1 (N.D. Cal. 2020).

Here, defendant Richmond argues that extraordinary and compelling reasons warranting his compassionate release exist due to his obesity, asthma, high blood pressure, and glaucoma. (Doc. No. 37 at 1.) To qualify for compassionate release, defendant must demonstrate that he is suffering from some "serious" medical condition "that substantially diminishes [his] ability . . . to provide self-care" in FCI Yazoo City and the medical condition is one "from which he . . . is not expected to recover." *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii). When the presentence report in this case was prepared, defendant "advised he is predominately in good health, though he does have glaucoma and cataracts in both eyes." (PSR at 11.) In support of his pending motion for compassionate release, defendant has attached medical records that were prepared in 2014, before

---

[5] Because defendant Richmond is only 37 years old, (*see* PSR at 2), these age and age-related factors are irrelevant to the court's disposition of the pending motion.

defendant began serving his current term of imprisonment. (*See* Doc. No. 41 (sealed).) Those records reveal that defendant was prescribed an albuterol inhaler to use "as needed" because he was diagnosed with asthma of an "unspecified type." (*Id.* at 2.)[6] Furthermore, those medical records do not reveal that defendant suffers from high blood pressure.[7] In connection with its opposition to the pending motion, the government has attached defendant's BOP medical records, which provide an up-to-date account of his health status. (*See* Doc. No. 48 (sealed).) Those records—generated on April 5, 2021—reflect that defendant is currently obese because his body mass index is greater than 35, he suffers from issues related to his eyes, he has unspecified chest pain, and a test result indicated an abnormal finding in defendant's blood chemistry. (*Id.* at 9.) Defendant is currently being prescribed medication for some of his health conditions. (*Id.* at 15.) When defendant was evaluated for chest pain in March of this year, the BOP medical staff noted that he "[a]ppeared [w]ell, [a]lert and [o]riented." (*Id.* at 2.) Defendant's BOP medical records do not show that he is suffering from high blood pressure.[8] According to the U.S. Centers for Disease Control and Prevention ("CDC"), defendant is at higher risk of severe illness if he were to contract COVID-19 due to his obesity. *See COVID-19: People at Increased Risk*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last visited June 7, 2021). Defendant is not at higher risk of

---

[6] Based on the medical evidence, it appears that defendant suffers from a mild form of asthma. *See Adult-Onset Asthma*, WEBMD, https://www.webmd.com/asthma/guide/adult-onset-asthma (last visited June 7, 2021) (noting that adults who suffer from moderate persistent asthma display symptoms daily with reduced lung function and are affected in activities). Further, the BOP has not diagnosed defendant as suffering from asthma. (*See* Doc. No. 48 at 9 (sealed).)

[7] These medical records indicate that defendant's blood pressure was not high at that time. (*See, e.g.*, Doc. No. 41 at 12, 15, 19 (sealed).) *See High Blood Pressure: High Blood Pressure Symptoms and Causes*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/bloodpressure/about.htm (last visited June 7, 2021) (requiring a systolic reading of 130mm Hg or higher and diastolic reading of 80 mm Hg or higher).

[8] It is true that on March 24, 2021, the BOP documented defendant's blood pressure and it was high at that time. (*See* Doc. No. 48 at 5 (sealed).) However, that was the only time defendant's blood pressure was high according to the BOP and, in fact, his blood pressure reading was normal about 30 minutes earlier. (*See id.*) Further, the BOP has not diagnosed defendant with high blood pressure or hypertension. (*See id.* at 9.) In short, there is not reliable evidence before the court suggesting that defendant suffers from high blood pressure.

suffering severe illness were he to contract COVID-19 based on any other condition according to the CDC.[9] It is questionable whether defendant qualifies as suffering from a "serious" condition based on his obesity. *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii). However, even if the court were to make that determination (and even assuming the court also found that defendant also suffers from high blood pressure), defendant Richmond cannot demonstrate that his current medical condition "substantially diminishes [his] ability . . . to provide self-care" in FCI Yazoo City for several reasons. *See id.*

The court must assess the circumstances as defendant's situation stands today. First, based on his BOP medical records, defendant appears to be conditioning well while in prison and appears to be receiving proper and regular care from the medical staff. Second, COVID-19 is not currently present in FCI Yazoo City. While that prison suffered from a COVID-19 outbreak at one point, with 167 inmates and 16 staff who tested positive but recovered, FCI Yazoo City currently reports zero active COVID-19 cases among inmates and staff.[10] *See COVID-19*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited June 7, 2021).[11] Thus, consideration of the risks associated with COVID-19 does not tip the scales in favor of defendant Richmond's compassionate release. Third, and last, the court notes that defendant declined to receive the vaccine for COVID-19 on May 7, 2021. (Doc. No. 51-1.) Because defendant's declination of the vaccine took place after briefing on the motion was completed, the court has not been presented with an explanation as to why he has declined the vaccine. Nonetheless, in cases where an inmate cites the risk of contracting COVID-19 as a basis for relief

---

[9] Defendant claims that his asthma, high blood pressure, and glaucoma provide a basis for his release. But the CDC only recognizes moderate-to-severe asthma as an at-risk category and defendant suffers from mild asthma, if at all. *See COVID-19: People at Increased Risk*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last visited June 7, 2021). Additionally, based on the medical evidence, it does not appear that defendant suffers from high blood pressure. Finally, the CDC does not list glaucoma as an at-risk category.

[10] FCI Yazoo City has a population of 1,394 inmates. *FCI Yazoo City Medium*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/yam/ (last visited June 7, 2021).

[11] The undersigned does not necessarily accept these reported numbers at face value in light of the constant changes in CDC guidance and guidelines potentially impacting them.

but refuses to receive a vaccine, courts "have nearly uniformly denied compassionate release" because such refusal "undercuts [an inmate's] fear of infection." *United States v. Robinson*, 17 Cr. 611-7 (AT), 2021 WL 1565663, at *3 (S.D.N.Y. Apr. 21, 2021) (collecting cases). While defendant has the right to refuse medical treatment, his failure to receive the COVID-19 vaccine significantly undermines his argument that he is at serious risk of contracting a severe illness from COVID-19. On this record, there is no basis upon which the court could conclude that defendant Richmond is "substantially diminishe[d]" in his ability to "provide self-care" at FCI Yazoo City due to the COVID-19 pandemic. *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii). He is conditioning well while in prison, FCI Yazoo City is reporting no active cases of COVID-19, and defendant declined to receive the vaccine for COVID-19. Defendant cannot carry his burden in demonstrating that compassionate release is warranted under these circumstances. *See Greenhut*, 2020 WL 509385, at *1 ("The defendant bears the initial burden to put forward evidence that establishes an entitlement to a sentence reduction.").

Therefore, in this case, the court does not find extraordinary and compelling reasons justifying compassionate release pursuant to § 3582(c)(1)(A).

**C.     Consistency With the § 3553(a) Factors**

Because the pending motion fails to establish extraordinary and compelling reasons justifying compassionate release in this case, the court need not address whether any reduction in defendant's sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a). Nonetheless, the court notes that defendant was convicted of a crime that carries with it a 10-year mandatory minimum sentence of imprisonment, 18 U.S.C. § 1591(b)(2), and defendant has only served about 82 months in prison. That time served is less than the mandatory-minimum term of imprisonment and only approximately 64% of the sentence imposed in this case accounting for good time credits. (*See* Doc. No. 44-1.)

**CONCLUSION**

For the reasons explained above, the court concludes that defendant has not demonstrated that "extraordinary and compelling reasons" exist warranting his compassionate release from

/////

11

prison.  Accordingly, defendant's motion for compassionate release (Doc. No. 33) is hereby denied.

IT IS SO ORDERED.

Dated: **June 7, 2021**

*Dale A. Drozd*
UNITED STATES DISTRICT JUDGE